UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARTIN ZWIEBACH and | : | |
| ELIZABETH ZWIEBACH, | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | 3:16-CV-1646 (VLB) |
| | : | |
| v. | : | |
| | : | September 14, 2017 |
| CITIMORTGAGE, INC., | : | |
|     Defendant. | : | |

**MEMORANDUM OF DECISION GRANTING
DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

I. **Introduction**

Before the Court is Defendant's Motion for Summary Judgment. Plaintiffs Martin and Elizabeth Zwiebach bring this action for declaratory and injunctive relief against Defendant Citibank, N.A. ("Citibank"), incorrectly identified by the Plaintiffs as CitiMortgage, Inc., asking the Court to declare that their home equity line of credit loan be deemed satisfied and paid in full. In support, Plaintiffs allege that they tendered and Defendant cashed a $35,000 check on which was written that the payment was intended to be "in full satisfaction and accord" of the amount then owed. Defendant now moves for summary judgment, arguing that the instrument cannot constitute an accord and satisfaction under the contract governing the Plaintiffs' account. For the reasons that follow, Defendant's Amended Motion for Summary Judgment [Dkt. No. 22] is GRANTED.

II. **Background**

On February 9, 2011, Mr. Zwiebach entered into a Home Equity Line of Credit Agreement and Disclosure ("Credit Agreement") with Citibank Federal Savings Bank ("FSB") for a home equity line of credit ("HELOC") account ending

1

in 7262, with a credit limit of $425,000. [Dkt. No. 22-3, Wood Aff. ¶ 5, Exh. 1 at 1]. On that same date, and to secure the HELOC, Plaintiffs executed a Home Equity Line of Credit Mortgage ("Mortgage") in favor of Citibank FSB, encumbering the property located at 53 Singing Oaks Drive, Weston, Connecticut. [*Id.*, Wood Aff. ¶ 6, Exh. 2 at 1]. The Mortgage was recorded on or around February 14, 2001 in volume 293 at page 630 of the Weston land records. [*Id.*, Wood Aff. ¶ 7, Exh. 2 at 1]. Citibank FSB merged into Citibank, N.A. as of October 1, 2006. [*Id.*, Wood Aff. ¶ 8, Exh. 3 at 1-3]. Under the terms of the merger, Citibank, N.A. is the successor in interest with respect to the Credit Agreement. [*Id.*, Wood Aff. ¶ 9].

The Credit Agreement contains a paragraph titled "Monthly Payment Plan," which states:

> You agree to pay to Us in U.S. dollars at least the Payment Due each month by the Payment Due Date as indicated in Your monthly billing statement . . . . We may, but need not, credit partial payments to Your Account. This will not excuse Your having to make the rest of the payment, notwithstanding any "payment in full" or similar language on Your payment, nor does it excuse You from having to make full payments in the future. Any payment You make which relates to an amount in dispute, or which claims to be a "payment in full" must be sent to: Citibank, Item Processing, Mail Stop 759, P.O. Box 790159, St. Louis, MO 63179.

[*Id.*, Exh. 1 at 1-2]. The Mortgage also states that Mr. Zwiebach "shall promptly pay when due the indebtedness secured by [the] Mortgage including, without limitation, that evidenced by the [Credit Agreement]." [*Id.*, Exh. 2 at 1].

Mr. Zwiebach became indebted to Defendant by borrowing money on the HELOC pursuant to the terms of the Credit Agreement. [*Id.*, Wood Aff. ¶ 10]. Mr. Zwiebach failed to pay the minimum amount due to the Defendant on June 3,

2011, and failed to make subsequent minimum monthly payments. [*Id.*, Wood Aff. ¶ 12].

By letter dated September 19, 2014, the Plaintiffs' tax representative, David Selig, sent to Citibank a written settlement offer in which he stated that the Plaintiffs wished to "compromise their second mortgage obligation for [the] lesser amount" of $100,000, and in which they requested a "face-to-face meeting with a CitiMortgage representative." [Dkt. No. 30-2, Exh. 2].

On or around October 19, 2015, Mr. Zweibach mailed a check to the Defendant in the amount of $35,000. [Dkt. No. 22-3, Wood Aff. ¶ 14]. On the check was written "ACCORD/SATISFACTION: SEE ATTACHED LETTER DATED 12 OCT. 2015." [Dkt. No. 30-3, Exh. 5]. The check was accompanied by a letter from Selig dated October 12, 2015, which stated that the check was offered as full and final payment of Plaintiffs' debt on the HELOC. [Dkt. No. 22-3, Wood Aff. ¶ 14, Exh. 6 at 2]. The letter also stated that Mr. Zwiebach's "good faith attempt to resolve [his] claims against, and liabilities to Citi . . . have been deliberately frustrated by mortgagor's employees . . . [who] intentionally protracted the payment process by refusing to candidly discuss [Mr. Zwiebach's] liabilities, by ignoring [his] written requests for a conference, and by providing contradictory information." [Dkt. No. 30-2, Exh. 5]. Selig also stated that "neither [Mr. Zwiebach] nor his agent can accurately reconcile [Citibank's] statements, specifically, the application of payments previously made, the imposition of penalties, and the calculation of interest thereon." *Id.*

3

Both the letter and the check were mailed to Citimortgage, Inc., P.O. Box 790005, St. Louis, MO 63179-0005 despite the fact that, as stated above, the parties agreed that all payments which claim to be a "payment in full" had to be sent to: Citibank, Item Processing, Mail Stop 759, P.O. Box 790159, St. Louis, MO 63179. [Dkt. No. 22-3, Exh. 1 at 2; Dkt. No. 30-2, Exh. 5]. Plaintiff submitted U.S. Postal Service return receipts as evidence that he mailed three letters to Citibank, two on September 22, 2014, and one on October 16, 2015. None of these letters were sent to the "payment in full" address. [*See* Dkt. No. 30-2, Exh. 9].

By letter dated November 3, 2015, Selig stated that he was "unable to reconcile [Mr. Zwiebach's] payments to the balance owed," and that he had not received a "true and complete copy of [Mr. Zwiebach's] payment history, from the first period of delinquency, which exceeded 60 days to the present," which he states he requested on June 22, 2015. [*Id.*, Exh. 6].

Selig also exchanged emails with Citibank representatives in January 2016, in which he asked about the status of the HELOC "settlement offer." [*Id.*, Exh. 7]. The Citibank representative responded that "[N]othing is in process. I haven't received any documents. I have not spoken to you. I need to update the borrower's income and expenses in the system, verbally. I must send you a list of documents. You must then return those to me complete. Once they are complete the process will begin and your client will be reviewed for settlement." *Id.* The Plaintiffs' tax representative responded that he had already requested a meeting regarding the Plaintiffs' account and had sent numerous follow-up letters. *Id.* Selig then emailed the Citibank representative asserting that the

HELOC obligation had been satisfied by the negotiation of the $35,000 check, and asking Citibank either to provide the Plaintiffs "with an immediate release, or alternatively, bring suit so this matter can be adjudicated." *Id.*

Defendant claims that as of September 30, 2016, $462,721.12 is owed to the Defendant pursuant to the Credit Agreement and the Mortgage. [Dkt. No. 22-3, Wood Aff. ¶ 15]. However, the Plaintiffs allege that they have been unable to determine the scope of their delinquency, and that in any event, the loan was satisfied when Citibank cashed their settlement check. [Dkt. No. 30-2, Exh. 5].

### III. <u>Standard of Review</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these

5

determinations are within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.' At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)). "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting [a] claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

IV. <u>Discussion</u>

At issue on summary judgment is (1) whether the terms of the Credit Agreement bar Plaintiffs' claims; and (2) whether the Plaintiffs' $35,000 payment satisfied the debt under the doctrine of accord and satisfaction.

A. <u>The Terms of the Credit Agreement Bar Plaintiffs' Claims</u>

Any contract "must be construed to effectuate the intent of the parties, which is determined from the language used and interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Murtha v. City of Hartford*, 303 Conn. 1, 7-8 (2011) (quoting *Remillard v. Remillard*, 297 Conn. 345, 355 (2010)); *see also Harbour Pointe, LLC v. Harbour Landing*

*Condominium Ass'n, Inc.*, 300 Conn. 254, 260 (2011) ("In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction." (quotations omitted)). "A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself . . . .  Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Allstate Life Ins. Co. v. BFA Ltd. P'ship*, 287 Conn. 307, 313-14 (2008) (quoting *Ramirez v. Health Net of the Northeast, Inc.*, 285 Conn. 1, 13 (2008)). "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." *Garbinski v. Nationwide Mut. Ins. Co.*, No. 3:10-cv-1191 (VLB), 2011 WL 3164057, at *4 (D. Conn. July 26, 2011) (quoting *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 495 (Conn. 2000)). "[T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face." *Id.*

Defendant argues that the Credit Agreement permits them to negotiate any payments with "payment in full" written on them without accepting that payment as satisfaction. In particular, the Credit Agreement states that Citibank "may, but need not, credit partial payments to Your Account. This will not excuse Your having to make the rest of the payment, notwithstanding any 'payment in full' or

7

similar language on Your payment, nor does it excuse You from having to make full payments in the future." [Dkt. No. 22-3, Exh. 1 at 1-2]. This language clearly and unambiguously permits Citibank to accept exactly the type of payment Plaintiffs tendered, without absolving the Plaintiffs of their responsibility to make future payments on their outstanding loan balance.

### B. Plaintiffs' Payment Does Not Fulfill The Requirements for Accord and Satisfaction

Even if the "payment in full" language in the Credit Agreement did not bar Plaintiffs' claims, they would fail pursuant to both the Uniform Commercial Code ("UCC") and common law doctrines of accord and satisfaction.

#### 1. UCC Accord and Satisfaction

Plaintiffs argue first that their payment meets the requirements for accord and satisfaction under the Connecticut UCC, Conn. Gen. Stat. § 42a-3-311. Section 3-311 provides:

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment, the following subsections apply.

(b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

(1) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a

8

**debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.**

. . . .

**(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.**

**The Credit Agreement clearly and unambiguously states that "Any payment You make which relates to an amount in dispute, or which claims to be a 'payment in full' must be sent to: Citibank, Item Processing, Mail Stop 759, P.O. Box 790159, St. Louis, MO 63179." The parties do not dispute that the Plaintiffs' $35,000 check was sent to Citimortgage Inc., P.O. Box 790005, St. Louis, MO 63179. Because Citibank provided the Plaintiffs with a conspicuous statement in the Credit Agreement designating a place to send communications concerning disputed debts and instruments tendered as full satisfaction, the attempted accord and satisfaction can only be valid if the Plaintiffs provide evidence that that the requirements of 3-311(d) have been met.**

**The commentary appended to section 3-311 is instructive on the question of whether the Court should impute knowledge to Citibank. It states,**

> **"Section 3-311(c) is intended to allow a claimant to avoid an inadvertent accord and satisfaction by complying with either subsection (c)(1) or (2) without burdening the check-processing operation with extraneous and wasteful additional duties . . . . If a full satisfaction check is sent to a lock box or other office processing checks sent to the claimant, it is irrelevant whether the clerk processing the check did or did not see the statement that the check was tendered as full satisfaction of the claim. Knowledge of the clerk is not imputed to the organization because the clerk has no responsibility with respect to an accord and satisfaction. Moreover, there is no failure of due diligence . . . if the claimant does not require its clerks to look for full satisfaction statements or accompanying communications. Nor is there any duty of the claimant to assign that duty to its clerks."**

9

Conn. Gen. Stat. § 42a-3-311, UCC Comment 7. Section 3-311(c) was designed specifically to protect organizations like Citibank, which has "claims against very large numbers of customers" and which undoubtedly relies upon automated means of negotiating loan payments for the sake of efficiency. *See* Conn. Gen. Stat. § 42a-3-311, UCC Comment 5.

The record contains no evidence regarding the purpose of P.O. Box 790005, other than that it was not specifically identified in the Credit Agreement as the location to which communications regarding disputes or payments in full should be sent. However, once Citibank shows that it has met the requirements of section 3-311(c), section 3-311(d) places the burden on the Plaintiffs to provide evidence that Citibank or an agent having direct responsibility with respect to the disputed obligation knew that the $35,000 check was tendered in full satisfaction of the claim. The only evidence Plaintiffs offer tends to show the opposite: they offer evidence that the October 12, 2015 letter and check were sent to the incorrect Citibank P.O. Box, and they offer evidence that no settlement offers were "in process" as of January 2016. [Dkt. No. 30-2, Exhs. 7, 9]. This is insufficient to overcome section 3-311(c)'s protections against inadvertent accord and satisfaction.

Moreover, Plaintiffs cannot establish that their offer met the good faith requirement set forth in section 3-311(a). First, the contract at issue expressly stated that Defendant could credit partial payments, which would not excuse the borrower's obligation to make the rest of the payments, even if the borrower wrote "payment in full" or similar language on the payment; and such a payment

10

would not excuse the borrower from having to make full payments of their loan. In addition, Defendant, a large multinational financial institution which processed thousands, if not millions of transactions daily, included in the contract a conspicuous statement directing Plaintiffs to send payments purporting to be in full satisfaction of their obligation to a specific address. Plaintiffs have offered no explanation for their failure to mail their settlement communications to this address. Second, Plaintiffs have offered no evidence that they submitted loan modification forms which they knew Defendant required in order to consider an offer of compromise. Consequently Plaintiffs cannot establish that they tendered the $35,000 check in good faith as full satisfaction of their loan.

### 2. Common Law Accord and Satisfaction

Plaintiffs next argue that even if they have not satisfied section 3-311, their payment meets the common law requirements for accord and satisfaction. "Under the common law, a check offered as payment in full or in full satisfaction initiates an accord and satisfaction and, if the creditor knowingly cashes such a check or otherwise exercises full dominion over it, he is deemed to have assented to the offer of accord. That acceptance of the offer of accord discharges the underlying debt and bars further claims relating thereto if it is supported by consideration." *Koehm v. Kuhn*, 41 Conn. Supp. 130, 137 (Super. Ct. 1987), aff'd, 18 Conn. App. 313 (1989). "To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim." *Riley v.*

*Pierson*, 51 Conn. Supp. 513, 521 (Super. Ct. 2009), *aff'd,* 126 Conn. App. 486 (2011) (quoting *Munroe v. Emhart Corp.*, 46 Conn. App. 37, 42 (1997)). "The proponent must be able to show that there was a meeting of the minds, and that the offer by the debtor was clearly tendered as full satisfaction of the debt and that the payment was knowingly accepted." *Munroe*, 46 Conn. App. at 42-43.

As an initial matter, there was no negotiation in this case. On the contrary, Selig exchanged emails with a Citibank representative in January 2016, in which he characterized his submissions as a "settlement offer." Defendant responded informing Plaintiffs' representative that he would have to submit specific documentation to initiate settlement discussions. There is nothing in the record indicating that Plaintiffs ever submitted the required documentation.

Even if compromise discussions had been initiated, as under the UCC, to satisfy the requirements of common law accord and satisfaction, the party with authority to settle the creditor's claims must know that the debtor intends to settle the claims via a final payment, and must know that the check is intended as full satisfaction of the claims. This knowledge can be inferred where the creditor deliberately alters the "payment in full" language on the instrument, where the parties have engaged in settlement negotiations, or where the parties are individuals or small businesses that do not process a large number of loan payment checks and are therefore unlikely to overlook any "payment in full" language. *See e.g., Riley*, 51 Conn. Supp. at 521 (finding accord and satisfaction where the debtor entered into a private mortgage with two individuals, conducted extensive negotiations regarding a prepayment penalty after which creditors

12

offered a final figure to satisfy the note and mortgage, the debtor sent a check for this amount, and the creditors cashed this check); *Twin City Pharm. v. Walnut Hill*, 2000 Con. Super. LEXIS 264, at *1-7 (2001) (finding accord and satisfaction where the parties reached a settlement agreement with a 30 day time limit, the debtor sent the creditor a check marked "The negotiation of this check represents acceptance of full and final settlement of all claims against Walnut Hill, Inc." outside of the 30 day limit, and the creditor negotiated the check after obliterating the settlement language from the check); *Munroe*, 46 Conn. App. at 43-44 (finding accord and satisfaction where, after severance payment negotiations, employer provided terminated employee with a cash-out memo and check, and employee cashed the check); *Cty. Fire Door Corp. v. C.F. Wooding Co.*, 202 Conn. 277, 279-80 (1987) (finding accord and satisfaction where debtor wrote on its check "By its endorsement, the payee accepts this check in full satisfaction of all claims against the C.F. Wooding Co. arising out of or relating to the Upjohn Project under Purchase Order ### 3302, dated 11/17/81" and the creditor crossed out this language, added "This check is accepted under protest and with full reservation of rights to collect the unpaid balance for which this check is offered in settlement," and negotiated the check).

      The Plaintiffs have not cited, and the court is unaware of, any cases finding that the negotiation of a check operates as a creditor's knowing acceptance for purposes of common law accord and satisfaction, where a debtor borrowed from a multinational financial institution like Citibank, and where the debtor failed to comply with instructions to mail any "payment in full" check to an address

**specifically provided for that purpose. Absent such authority, and absent any evidence the Citibank in fact intended to accept the $35,000 as full satisfaction of the HELOC debt, effectively amending the portion of the Credit Agreement that permitted Citibank to negotiate the check as a partial payment, Plaintiffs have raised no genuine issue of fact that would support their claim under common law accord and satisfaction.**

## V. Conclusion

**For the foregoing reasons, the Defendant's Amended Motion for Summary Judgment [Dkt. No. 22] is GRANTED. The Clerk is directed to enter judgment for the Defendant and to close this file.**

**SO ORDERED this 14th day of September, 2017, at Harford, Connecticut**

                         __/s/_____
                         **VANESSA L. BRYANT**
                         **UNITED STATES DISTRICT JUDGE**